Filed 9/25/24  Pierson v. Rushing CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| RAYMOND H. PIERSON III, | C097290 |
| Plaintiff and Appellant, | (Super. Ct. No. 18CVC10813) |
| v. | |
| PHYLISS M. RUSHING, | |
| Defendant and Respondent. | |

Plaintiff Raymond H. Pierson III, individually and doing business as Raymond H. Pierson, M.D., appeals from a judgment dismissing his lawsuit against defendant Phyllis M. Rushing.  We affirm.

1

## FACTS AND PROCEEDINGS

*The Complaint*

On October 9, 2018, plaintiff filed a complaint against Rushing and her automobile insurer, CSAA Insurance Services, Inc., and CSAA Insurance Exchange (CSAA). The complaint generally alleged that Rushing drove her car into plaintiff's unoccupied medical office on October 10, 2016. It alleged causes of action against Rushing for (1) negligence – general, (2) negligent operation of a motor vehicle – business disruption, (3) negligence – personal injury, (4) intentional infliction of emotional distress, and (5) negligent business interference with projected economic advantage. It also alleged the fifth cause of action against CSAA, and it alleged a sixth cause of action for breach of contract solely against CSAA on the basis that CSAA failed to act in good faith. Plaintiff sought damages including punitive damages.

*Demurrers and Motion to Strike Punitive Damages Claim*

Rushing demurred to the fourth cause of action for intentional infliction of emotional distress, and the fifth cause of action for negligent business interference with projected economic advantage. The trial court sustained the demurrers on the basis that plaintiff's complaint failed to plead facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).)[1] The court denied leave to amend because plaintiff failed to satisfy his burden to show in what manner he could amend his complaint, or how amendment would change the legal effect of his pleading.

Rushing also moved to strike plaintiff's claim for punitive damages, which the court granted on the basis that plaintiff did not allege any theory that could support a punitive damages award.

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

The trial court also sustained without leave to amend CSAA's demurrers to each of the causes of action the complaint asserted against it, and dismissed it from the case. Plaintiff appealed that judgment in October 2019, which this court affirmed in a nonpublished opinion. (*Pierson v. CSAA Insurance Services, Inc.*, *et al*. (Jun. 30, 2023, C091099) (*Pierson I*).)

*Order Granting Motion to Lift Stay*

Plaintiff's appeal of the judgment in favor of CSAA named Rushing as a defendant, causing the proceedings against Rushing to be automatically stayed pending the appeal's resolution. (§ 916.) On April 1, 2021, Rushing filed a motion in this court seeking a determination that she was not a party to the appeal, and for an order lifting the automatic stay. A panel of this court agreed to dismiss Rushing from the appeal, but denied the request to lift the stay without prejudice, observing that Rushing could file a motion seeking that relief in the trial court.

On June 25, Rushing filed in the trial court a motion to lift the automatic stay on the basis that she was not a party to plaintiff's appeal of the judgment in favor of CSAA. The court granted the motion on September 22. It recognized that the pendency of an appeal did not divest it of jurisdiction to determine ancillary or collateral matters not affecting the judgment on appeal; found that Rushing "[wa]s not a party to the appeal, [wa]s of advanced age, and the incident in question occurred over five (5) years ago"; and concluded that proceeding with the case as to Rushing "does not impact the effectiveness of Plaintiff's appeal against Defendant CSAA."

3

*Order Granting Motion for Trial Preference*

On December 17, Rushing filed a motion for trial preference pursuant to section 36, subdivision (a),[2] arguing that she was 94 years old, had heart issues,[3] and had a substantial interest in the case based on plaintiff's claimed damages exceeding the limits of her insurance coverage.

In a tentative ruling, the trial court granted Rushing's motion for trial preference under section 36, subdivision (a).  At the hearing on the motion, plaintiff argued that Rushing did not have a substantial interest in the case because he only sought damages of up to the limits of Rushing's policy, and CSAA would be required to pay any damages awarded exceeding policy limits due to its bad faith conduct in refusing to settle his claims.

The trial court granted the motion under section 36, subdivision (e),[4] noting Rushing's advanced age, counsel's representation regarding her health issues, and the lengthy duration of the case to that point.  It noted that "[Rushing's] age alone at this point would satisfy" the statute's requirements.

The court set a mandatory settlement conference for May 5, 2022, a final trial readiness conference for June 3, and trial for June 13.

---

[2] Section 36, subdivision (a) provides:  "A party to a civil action who is over 70 years of age may petition the court for a preference, which the court shall grant if the court makes both of the following findings:  [¶]  (1) The party has a substantial interest in the action as a whole.  [¶]  (2) The health of the party is such that a preference is necessary to prevent prejudicing the party's interest in the litigation."

[3] The motion asserted that she had "a stent inside a stent and a defective heart valve."

[4] Section 36, subdivision (e) provides:  "Notwithstanding any other provision of law, the court may in its discretion grant a motion for preference that is supported by a showing that satisfies the court that the interests of justice will be served by granting this preference."

4

*Plaintiff's First Motion to Continue Trial*

In anticipation of trial, Rushing filed a trial brief, motions in limine, a trial exhibit list, a trial witness list, and a statement of the case.

At the trial readiness conference on June 3, plaintiff requested a continuance of the trial date on the basis that he had not been able to litigate his case during the previous month because he, his family, and his assistant were all suffering from the effects of COVID-19. He also asserted that he was overwhelmed by his responsibilities in his various legal proceedings, and acknowledged that he was not prepared for trial.

The trial court accepted plaintiff's representation, made under penalty of perjury, that he and his family had been ill, and found good cause to vacate the trial date. The court continued the trial date to August 9, and set a final trial readiness conference for July 29.

*Plaintiff's Second Motion to Continue Trial*

At the trial readiness conference, plaintiff stated that he was not ready to proceed, and trial must be stayed because he had filed a writ of supersedeas in this court requesting a temporary stay of trial proceedings. The court rejected his argument that trial must be stayed while his writ petition was pending; it noted that plaintiff had not filed a written motion to continue, and the mere filing of a writ petition did not stay trial court proceedings. Plaintiff asserted that he could file a written motion within "a couple hours." The court set an additional trial readiness conference for August 5 to address any ruling from this court on plaintiff's petition. Observing that plaintiff had not filed any motions in limine, the court extended the deadline to file such motions to August 4.[5]

---

[5] In his reply brief, plaintiff asserts that he notified the court at this hearing that he would require a trial continuance due to his health issues, because he was experiencing "the worst phase of [his] life." (Italics omitted.) However, he cites to a portion of the record in which he stated that "the worst phase of [his] life" was due to the challenge presented by keeping up with the pace of his legal proceedings. He stated that he would be seeking

5

Also on July 29, after the trial readiness conference had concluded, this court denied plaintiff's petition for writ of supersedeas. (*Pierson I* (order denying petition issued Jul. 29, 2022, C091099).)

On August 4, plaintiff filed a single motion in limine, and he notified the court that he was unable to file additional motions in limine before the deadline due to the unavailability of his part-time assistant.

Early in the morning on Friday, August 5, plaintiff e-mailed defense counsel a copy of a motion to continue trial that he had not filed with the court. Later that morning, plaintiff filed multiple motions in limine, which the court rejected as untimely. Plaintiff also notified the court that he intended to seek review in our Supreme Court of the trial court's ruling lifting the automatic stay.

The trial court conducted the trial readiness conference in a different courtroom than had been initially scheduled, and plaintiff did not appear. Defense counsel informed the court that plaintiff had e-mailed him a motion to continue that morning. The court responded that it would not consider a motion it had not received, and confirmed the trial date.

After the hearing, plaintiff sent defense counsel an e-mail stating that he failed to appear at the trial readiness conference because he did not realize the conference had been moved from the initially scheduled courtroom. He added that he intended to file an immediate ex parte application for continuance in the trial court that afternoon. Defense counsel responded that he would oppose any trial continuance.

On Monday, August 8, plaintiff filed an ex parte request for a four-month continuance of trial. He asserted that he had a long history of hypercholesterolemia and hypertriglyceridemia, which had required aggressive medical therapy for more than 20

a continuance not due to his health issues, but rather due to the pendency of his writ petition filed in this court.

6

years and had become increasingly symptomatic since February 2022.  Plaintiff had decided to forego recommended testing on his heart due to the urgency of his various legal proceedings, but an increase in symptoms "[o]ver recent weeks" had required him to comply with his cardiologist's recommendation that he suspend his involvement in the case to permit evaluation and treatment of his condition.  In support, plaintiff attached a letter dated August 4, 2022, ostensibly from his cardiologist, recommending that plaintiff "immediately suspend all involvement in the current legal proceedings until his cardiac evaluation and likely need for intervention have been completed and a full recovery achieved."  The letter was unsigned, and did not specify the legal proceeding that was the subject of the letter.

Plaintiff asserted other bases for his request for continuance, including that the trial court's decision to lift the automatic stay caused him to delay two major orthopedic procedures, the adverse effects on his physical and mental health required him to seek legal representation in the litigation, and the various legal proceedings in which he was involved left him with insufficient time and financial resources to prepare for trial.

Plaintiff argued that he brought the motion "as soon as possible . . . following the shock he received from the Third District Court of Appeal in the July 29, 2022 decision to deny the July 18, 2022 submitted Petition for Writ of Supersedeas."  (Italics omitted.)  He added that he had intended to file the motion in court during the August 5 trial readiness conference, but he had appeared in the wrong courtroom because he was unaware the location of the hearing had been changed.

On August 9, the court called the case to trial.  Plaintiff did not appear, although his assistant, Sherry Hills, was present and informed the court that plaintiff had an emergency and had been hospitalized.[6]  The court stated that it did not consider

---

[6] Plaintiff attaches a declaration of Hills to his reply brief.  We do not consider evidence not included in the record on appeal.  (*People v. Superior Court (Lavi)* (1993) 4 Cal.4th

7

plaintiff's request for a continuance that had been filed the previous day because it was untimely, and that it found plaintiff's purported hospitalization to be a tactic to further delay trial. Rushing made an oral request to dismiss and enter judgment in her favor, which the court granted. The jurors were dismissed.

On August 10, Hills filed a document entitled urgent judicial notice, which stated that plaintiff had been taken to the hospital after experiencing chest pain early in the morning on August 9. The filing also stated that Hills had "received notice" that plaintiff had undergone a procedure, and plaintiff was still admitted to the hospital. Hills speculated that plaintiff would be able to confirm "this emergent situation," and invited the court to contact the hospital to confirm that plaintiff had been admitted. The notice was not filed under penalty of perjury.

On August 24, the trial court entered judgment after trial. Notice of entry of judgment was filed on September 1. Plaintiff timely filed a notice of appeal. The case was fully briefed in June 2024 and was assigned to the current panel at the end of that month.

## DISCUSSION

### I

*Leave to Amend Complaint*

Plaintiff contends the trial court abused its discretion by refusing to grant leave to amend after sustaining Rushing's demurrers to the complaint's causes of action for intentional infliction of emotional distress and negligent business interference with projected economic advantage. Plaintiff has failed to demonstrate an abuse of discretion.

---

1164, 1173, fn. 5 [declining to consider declarations that were not filed in the trial court]; *Spaccia v. Superior Court* (2012) 209 Cal.App.4th 93, 108 ["we do not consider evidence which was not before the trial court when it ruled on the motion"]; Cal. Rules of Court, rule 8.204(a)(2)(C) [factual recitation limited to matters in the record].)

A demurrer tests the sufficiency of the complaint as a matter of law, and it raises only questions of law. (§ 589, subd. (a).) A complaint survives demurrer if it states facts disclosing some right to relief. (*Longshore v. County of Ventura* (1979) 25 Cal.3d 14, 22.) On appeal we presume the judgment to be correct (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564), and it is plaintiff's burden to rebut the presumption of correctness accorded to the trial court's decision (see *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 492 [noting that these principles apply to " ' "an appeal from any judgment" ' "]) by providing reasoned argument and citations to relevant legal authority to support that argument (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721). "[C]onclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

These "same rules apply to a party appearing in propria persona as to any other party." (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 205.) Indeed, self-represented litigants are held to the same standards as attorneys and must comply with the rules of procedure. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985; *Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543.) This is not intended to penalize self-represented litigants; instead, it is necessary to maintain stability in appellate proceedings, requiring adherence to the forms and procedures that govern appeals.

Here, plaintiff asserts in conclusory fashion and without supporting argument or citation to authority that Rushing's demurrers and motion to strike punitive damages "should not have been granted." (Emphasis omitted.) In the absence of reasoned argument and citation to authority to support that argument, plaintiff's argument fails to rebut the presumption of correctness.

"Where the demurrer was sustained without leave to amend, we consider whether the plaintiff could cure the defect by an amendment. The plaintiff bears the burden of proving an amendment could cure the defect." (*T.H. v. Novartis Pharmaceuticals Corp.*

9

(2017) 4 Cal.5th 145, 162.) "To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden. [Citation.] The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44.) " '[S]uch a showing need not be made in the trial court so long as it is made to the reviewing court.' " (*Governing Board v. Haar* (1994) 28 Cal.App.4th 369, 375.) "[I]t is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

Here, plaintiff asserts that the trial court abused its discretion by refusing to grant him leave to amend, but he offers no argument as to how he could amend his complaint to state a viable cause of action as to his fourth and fifth causes of action. Thus, he has failed to demonstrate a reasonable possibility that amendment could cure the complaint's defects.[7] (*Aubry v. Tri-City Hospital Dist.*, *supra*, 2 Cal.4th at p. 967.)

---

[7] In his reply brief, plaintiff argues that leave to amend should have been granted because *CSAA* intentionally interfered with his business for its economic advantage. That is not an argument as to why leave to amend should have been granted as to the cause of action asserted against *Rushing*.

## II

### *Lifting the Automatic Stay*

Plaintiff contends the trial court erred by lifting the automatic stay (§ 916) while his appeal of the judgment in favor of CSAA was pending.

Section 916, subdivision (a) provides in relevant part that "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, . . . but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order." " '[W]hether a matter is "embraced" in or "affected" by a judgment [or order] within the meaning of [section 916] depends on whether postjudgment [or postorder] proceedings on the matter would have any effect on the "effectiveness" of the appeal.' " (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189.)

In challenging the trial court's decision to lift the automatic stay, plaintiff argues only that he was put in a disadvantageous position because he was not able to conduct discovery while trial court proceedings against Rushing were stayed from April 2020 until September 2021. But plaintiff offers no argument or analysis challenging the trial court's legal conclusion, and therefore plaintiff has failed rebut the presumption of correctness afforded to trial court decisions. (*Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564; *Los Angeles Unified School Dist. v. Torres Construction Corp.*, *supra*, 57 Cal.App.5th at p. 492.)

## III

### *Trial Preference*

Plaintiff contends the trial court erred in granting Rushing's request for trial preference. He argues that Rushing did not have a substantial interest in the litigation, as required by section 36, subdivision (a), because he offered to settle the case within policy limits, and CSAA would have been liable for any damages awarded in excess of policy limits due to its bad faith conduct in rejecting his settlement offers.

11

However, as plaintiff recognizes in his reply brief, the trial court granted Rushing's request for trial preference under section 36, subdivision (e), which provides: "Notwithstanding any other provision of law, the court may in its discretion grant a motion for preference that is supported by a showing that satisfies the court that the interests of justice will be served by granting this preference." The court noted that "[Rushing's] age alone at this point would satisfy" the requirements of section 36, subdivision (e). In other words, the trial court granted Rushing's request on the basis that Rushing's showing of her advanced age satisfied the court that the interests of justice would be served by granting trial preference. Accordingly, plaintiff's argument that Rushing did not have a substantial interest in the litigation fails to demonstrate error because it does not challenge the basis of the court's ruling.

IV

*Continuance*

Plaintiff contends the trial court abused its discretion when it denied (by indicating it was "not consider[ing]" the motion as it was untimely and was a delay tactic) his ex parte application to continue trial for four months. We disagree.

A. *Legal Background*

"To ensure the prompt disposition of civil cases, the dates assigned for a trial are firm. All parties and their counsel must regard the date set for trial as certain." (Cal. Rules of Court, rule 3.1332(a).)[8] "A party seeking a continuance of the date set for trial, whether contested or uncontested or stipulated to by the parties, must make the request for a continuance by a noticed motion or an ex parte application . . . with supporting declarations. The party must make the motion or application as soon as reasonably practical once the necessity for the continuance is discovered." (Rule 3.1332(b).)

---

[8] Further undesignated rule references are to the California Rules of Court.

"[T]here is no policy in this state of indulgence or liberality in favor of parties seeking continuances. Rather, such parties must make a proper showing of good cause." (*County of San Bernardino v Doria Mining & Engineering Corp.* (1977) 72 Cal App.3d 776, 781; rule 3.1332(c).) Circumstances that may indicate good cause include the unavailability of a party or trial counsel due to death, illness, or other excusable circumstances. (Rule 3.1332(c)(2), (3).)

However, in ruling on a request for continuance, the trial court "must consider all the facts and circumstances that are relevant to the determination," which may include "[t]he proximity of the trial date" (rule 3.1332(d)(1)); "[w]hether there was any previous continuance, extension of time, or delay of trial due to any party" (rule 3.1332(d)(2)); "[t]he length of the continuance requested" (rule 3.1332(d)(3)); "[t]he prejudice that parties or witnesses will suffer as a result of the continuance" (rule 3.1332(d)(5)); "[i]f the case is entitled to a preferential trial setting, the reasons for that status and whether the need for a continuance outweighs the need to avoid delay" (rule 3.1332(d)(6)); "[w]hether all parties have stipulated to a continuance" (rule 3.1332(d)(9)); "[w]hether the interests of justice are best served by a continuance, by the trial of the matter, or by imposing conditions on the continuance" (rule 3.1332(d)(10)); and "[a]ny other fact or circumstance relevant to the fair determination of the motion or application" (rule 3.1332(d)(11)).

The trial court " 'has a wide discretion in granting or denying continuances, and its decision is not disturbed on review unless a clear abuse of discretion is shown.' " (*Agnew v. Parks* (1963) 219 Cal.App.2d 696, 700.)

B. *Analysis*

Plaintiff argues that he established good cause for a continuance through his written request for continuance and his hospitalization on the morning trial was set to begin, and he requested the continuance as soon as reasonably practical once the necessity for continuance had been discovered. He adds that the trial court, in denying

the motion as untimely and finding that plaintiff's purported hospitalization was a tactic to delay trial, demonstrated its personal bias against him and failed to consider the relevant facts, circumstances, and interests. As we will explain, we disagree.

Initially, plaintiff argues that his written request for a continuance and hospitalization on the morning of trial established good cause for granting the continuance. Plaintiff's written request explained that he had been experiencing increasing chest pain "[o]ver recent weeks," and the request attached an unsigned letter from his cardiologist recommending that he immediately suspend his involvement in unspecified legal proceedings. On the morning of trial, Hills informed the court that plaintiff had been hospitalized. Under rule 3.1332(c), the unavailability of counsel due to illness is a circumstance under which a court "*may* grant a continuance." (Italics added.)

However, the issue before us is whether the trial court abused its discretion when it denied the continuance based on its findings that the request was untimely and that plaintiff's hospitalization was a tactic to further delay trial. The court's decision implicitly included the consideration of multiple factors under rule 3.1332(d).

As to the timeliness of the request, it was received by the trial court after 1:00 p.m. on August 8, after trial had been confirmed at the trial readiness conference and literally on the eve of trial. (Rule 3.1332(d)(1) [court must consider proximity of trial date].) Additionally, defense counsel informed the court on the Friday before trial that plaintiff had e-mailed him a copy of the motion for continuance, suggesting that the request was not made "as soon as reasonably practical once the necessity for the continuance is discovered." (Rule 3.1332(b).)

Plaintiff's request came after the trial court had previously granted him a 60-day continuance on the basis that he was unprepared for trial because he and his family had been ill. (Rule 3.1332(d)(2) [court must consider whether there was any previous continuance, extension of time, or delay of trial].) His second request sought a further delay of *four months* (rule 3.1332(d)(3) [court must consider length of requested

14

continuance]), which the trial court was statutorily prohibited from granting. (See § 36, subd. (f) [upon granting motion for trial preference, trial court may not grant a continuance of more than 15 days, and no more than one continuance for physical disability may be granted].)

The trial court was also entitled to consider the prejudice to Rushing had it granted plaintiff's eve-of-trial request. (Rule 3.1332(d)(5) [court must consider prejudice to parties], (6) [court must consider the reasons for trial preference status and whether need for continuance outweighs need to avoid delay], (10) [court must consider whether interests of justice are best served by continuance or trial].) Rushing's collision with plaintiff's unoccupied medical practice building occurred nearly six years before the date of plaintiff's motion to continue, and further delay of the trial would continue to require her to be involved in litigation at her advanced age. The trial court was authorized to determine that the interests of justice would be best served by trying the matter and avoiding further delay in the trial. (Rule 3.1332(d)(6), (10).) Indeed, given the circumstances, it comes as no surprise that Rushing opposed the continuance. (Rule 3.1332(d)(9).)

Plaintiff argues that the trial court's finding that his hospitalization constituted a delay tactic demonstrated the court's personal bias against him. But in considering whether the interests of justice would be best served by a continuance or trial (rule 3.1332(d)(10)), the trial court was entitled to determine whether plaintiff's purported emergency was indeed an emergency warranting a continuance, or whether it instead was a tactic intended to delay trial. At the time it denied the continuance, the trial court did not have conclusive evidence that plaintiff had experienced an actual emergency requiring hospitalization. Hills had notified the court that plaintiff had been hospitalized,

15

but the record does not reflect that she provided sworn testimony, or proof that he was hospitalized due to an emergency.**9**

In addition to not having conclusive proof of plaintiff's emergency, the trial court had reason to believe plaintiff's purported emergency was a delay tactic. Plaintiff had previously acknowledged on more than one occasion that he was unprepared for trial. In arguing for the continuance that the court granted, plaintiff asserted that he was unprepared for trial because he and his family had been ill.**10** On August 4, he notified the court that he was unable to file additional motions in limine because his part-time assistant was unavailable. On August 5, he notified the court of his intention to seek review in the Supreme Court of the court's decision to lift the automatic stay, an apparent attempt to halt trial court proceedings. In his second request for a continuance, plaintiff admitted that he "has no additional remaining time nor financial resources to develop the case for trial" and could not "properly proceed with discovery inclusive of depositions, preparation of exhibits and the hiring of expert witnesses." Given these various admissions, the trial court could have reasonably determined that plaintiff remained unprepared for trial, and was attempting to further delay trial in a case that had been pending for several years.

Finally, we note plaintiff's argument on appeal that "CCP 437(c)" required the court to grant his request for continuance because he had made repeated requests for time to proceed with appropriate discovery to establish his claims. His request for continuance argued that "CCP § 437C(1)" authorized trial courts to grant continuances to permit

---

**9** We recognize that Hills filed a document entitled urgent judicial notice the day *after* the trial court granted Rushing's oral request to dismiss and to enter judgment in her favor. But that document was not before the trial court at the time of its determination, and in any event was unsworn and based on hearsay.

**10** Plaintiff acknowledged he "didn't send [Rushing] a single interrogatory" and "[had not] had time to do any preparation whatsoever."

16

additional discovery in the context of summary judgment motions. Initially, we are unable to determine the statute on which plaintiff intends to rely. Section 437 does not contain a "subdivision (c)," and in any event that statute concerns motions to strike and is not applicable here. Section 437c concerns summary judgment motions, but it does not contain a "subdivision (1)." It may be that plaintiff intends to cite to section 437c, subdivision (h), which authorizes trial courts to grant continuances to permit discovery where it appears from the affidavits submitted in opposition to a summary judgment motion that facts essential to justify opposition may exist but cannot be presented. But that statute is not applicable here, where plaintiff's request for a continuance was made on the eve of trial after four years of litigation, and not in the context of a summary judgment motion.

Based on the foregoing, plaintiff has failed to demonstrate that the court abused its discretion in denying his motion for continuance.[11]

## DISPOSITION

The judgment is affirmed. Rushing shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

/s/

---

[11] Plaintiff raises other arguments, which we need address only briefly. In a stand-alone argument, he contends the trial judge "repeatedly and indisputably" demonstrated "exceptional prejudice" toward him, but he provides no specific examples of such bias to support his claim. He also argues that this court improperly refused to allow his prior appeal against CSAA to proceed as against Rushing, but this appeal is not the proper venue for that claim. Lastly, we do not consider plaintiff's claim, raised for the first time in his reply brief, that the trial court erred when it granted Rushing's request for dismissal under section 581. (See *Raceway Ford Cases* (2016) 2 Cal.5th 161, 178 ["We generally do not consider arguments raised for the first time in a reply brief"].)

17

Duarte, Acting P. J.


We concur:


_____/s/_____
Krause, J.


_____/s/_____
Mesiwala, J.

18